IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL MARIE DUPONT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 09-1526 |
| v. | ) | |
| | ) | Chief Judge Gary L. Lancaster |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | Electronic Filing |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION AND ORDER

Hon. Gary L. Lancaster,  November 3, 2010
Chief U.S. District Judge

I. **INTRODUCTION**

Carol Marie DuPont ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 ("Act"). This matter comes before the court on cross motions for summary judgment. (Doc. Nos. 5, 7). The record has been developed at the administrative level. For the following reasons, the decision of the ALJ will be vacated and the case REMANDED for further consideration.

1

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB with the Social Security Administration on December 1, 2006, claiming an inability to work due to disability as of November 11, 2006. (R. at 105 – 112)[1]. Plaintiff was initially denied benefits on August 7, 2007. (R. at 74 – 78). A hearing was scheduled for September 3, 2008, and Plaintiff appeared to testify, represented by counsel. (R. at 27). A vocational expert, John Panza, also testified. (R. at 27). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on April 2, 2009. (R. at 7 – 22). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on September 18, 2009, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 5).

Plaintiff filed his Complaint in this court on November 16, 2009. Defendant filed his Answer on January 22, 2010. Cross motions for summary judgment followed.

## III. STATEMENT OF THE CASE

### A. General Background

Plaintiff was born on October 6, 1966, and was forty one years of age at the time of the administrative hearing. (R. at 33 – 34). Plaintiff lived with her husband and two children. (R. at 34). Plaintiff graduated from high school but had no further education or vocational training. (R. at 37). For approximately thirteen years preceding her claimed date of disability, Plaintiff worked at a nursing home doing laundry. (R. at 37 – 39). On November 12, 2006 during a coffee break at work, Plaintiff suffered a heart attack and lost consciousness. (R. at 41 – 42, 174, 199). She was revived by emergency medical personnel, and was subsequently hospitalized for

---

[1] Citations to Doc. Nos. 3 – 3-11, the Record, *hereinafter*, "R. at __."

twelve days. (R. at 41 – 42, 174, 199). Plaintiff claims that she is permanently disabled as a result, and has not returned to work since her heart attack.

*B. Surgical Intervention*

After admission to the hospital on November 12, 2006 following her heart attack, Plaintiff's heart function and size were found to be abnormal, and her ejection fraction was determined to be in the fifteen to twenty percent range. (R. at 224). The following day, it was noted that Plaintiff's left ventricular function was abnormal. (R. at 349). Her entire apex, interior septum, mid and distal anterior septum, and mid and distal septum were akinetic. (R. at 349). The anterior wall, lateral wall, inferior wall, posterior wall, and basal anteroseptum were also severely hypokinetic. (R. at 349).

While in the hospital for treatment of her heart failure, a November 15 magnetic resonance image ("MRI") of Plaintiff's brain found an aneurysm on the medial aspect of the junction of the cavernous and supraclinoid portions of her left internal carotid artery. (R. at 261). Treatment of the aneurysm was delayed until Plaintiff's heart condition was fully addressed. (R. at 213, 227).

On November 16, Plaintiff underwent a left and right heart catheterization, coronary angiography, and left ventriculogram. (R. at 219). The following day, a stent was placed in Plaintiff's heart. (R. at 216). On November 20, Plaintiff then underwent surgery for placement of an implantable cardiac defibrillator ("ICD"). (R. at 454). Following implantation of the ICD, it was noted that Plaintiff's heart was once again normal in size and shape. (R. at 236). At the time of discharge, however, a large infarction did exist on Plaintiff's heart. (R. at 214).

*C. Treatment History*

Plaintiff's former primary care physician, May Flores, M.D., treated Plaintiff while she was recuperating from heart surgery. Dr. Flores completed an assessment of Plaintiff's physical limitations on September 17, 2007. In it, she indicated that Plaintiff could sit for eight hours of an eight hour workday, stand for four hours, and walk for one hour. (R. at 524). Plaintiff would need to be free to alternate positions frequently because of pain, and would be limited with respect to bending, stooping, crawling, climbing, balancing, crouching, and kneeling. (R. at 524 – 25). Plaintiff was not to do any lifting. (R. at 525). Finally, Dr. Flores indicated that Plaintiff would need to rest for approximately five minutes every hour, and would need to lie down or sit in a recliner for a substantial period of the day. (R. at 526). All of the aforementioned limitations were determined by Dr. Flores to limit Plaintiff functionally for only six months to a year. (R. at 526).

Dr. Flores noted on September 17, 2007, that Plaintiff was anxious to return to work. (R. at 495). However, Dr. Flores advised Plaintiff that she should remain off of work until she received clearance from her neurosurgeon, regarding her aneurysm, and her cardiologist, with respect to her heart. (R. at 495, 527).

Jennifer E. Lee, M.D., was Plaintiff's cardiologist following her heart attack. Immediately after Plaintiff's discharge from the hospital, Dr. Lee assessed Plaintiff's functional limitations. At the time, Plaintiff could only occasionally lift or carry two to three pounds. (R. at 210). Standing was limited to one hour or less of an eight hour workday, but sitting, pushing, and pulling were not limited. (R. at 210). She could only occasionally bend, kneel, stoop, or crouch, and was not to balance or climb, at all. (R. at 211). Further, Plaintiff was to avoid poor ventilation, heights, moving machinery, vibration, temperature extremes, chemicals, fumes,

4

odors, and gases. (R. at 211). Finally, Dr. Lee concluded that Plaintiff had an overall fair prognosis. (R. at 209).

At a January 5, 2007 follow up examination, Dr. Lee noted that Plaintiff claimed to be feeling well, was walking ten to fifteen minutes at a time, was performing light duties around the house, and noticed no changes in functional capacity. (R. at 342). Plaintiff informed Dr. Lee that she was eager to return to work. (R. at 343). Dr. Lee felt that in light of the absence of continued heart problems, Plaintiff could likely return to work in four to six weeks if she responded well to increased physical activity. (R. at 343).

Over the next several visits, Plaintiff's condition improved – she could walk approximately a mile at a time in roughly thirty minutes, as long as she avoided inclines and hills. (R. at 386). While Plaintiff noted becoming fatigued easily on stairs, her medications appeared to be effective, and her left ventricular ejection factor improved from fifteen to twenty percent, to thirty percent. (R. at 387). Plaintiff's ICD also recorded no heart problems. (R. at 385).

On September 25, 2007, Dr. Lee recommended that Plaintiff continue to remain off work until December, when she would be re-evaluated with a stress test. (R. at 499). At her December 18, 2007 examination, Dr. Lee found no evidence of stress-induced ischemia and concluded that Plaintiff was doing well with respect to her heart condition. (R. at 482). Though Plaintiff had been diagnosed with anemia just prior to her last visit with Dr. Lee on the record, Dr. Lee noted that Plaintiff was exercising regularly with no difficulty while on level ground. (R. at 481).

With respect to her aneurysm, Plaintiff's neurosurgeon, Michael B. Horowitz, M.D., determined that a "coiling" procedure would resolve it. (R. at 399). The procedure was successfully performed by Dr. Horowitz, and approximately one month after surgery on

5

September 25, 2007, he opined that Plaintiff was capable of returning to all normal activities. (R. at 500).

At an initial examination on February 20, 2008, with her new primary care physician, Lindsay Weglinski, M.D., Plaintiff denied chest pain or shortness of breath. (R. at 531). Her heart was regular in rate and rhythm, there were no murmurs, rubs, or gallops, and her lungs were clear. (R. at 531). No limitations findings were made, though Dr. Weglinski did note Plaintiff's history of heart disease and her aneurysm. (R. at 528).

*D. Administrative Hearing*

Plaintiff explained that her typical day began by preparing breakfast for her children and getting them off to the bus for school, making beds and cleaning dishes, occasionally walking or going shopping in town with her mother, getting lunch, and then laying down to rest in the early afternoon for an hour and a half. (R. at 47, 55). Plaintiff did light cleaning, but no longer cleaned her floors or vacuumed because it would strain her heart. (R. at 48). When she went walking, Plaintiff claimed that she could walk about a mile over the course of an hour without the need to rest, as long as she avoided hills or inclines. (R. at 49). She had difficulty going up and down the steps in her house because she was easily out of breath. (R. at 54). Plaintiff had noticed that she was tired quite frequently, in general. (R. at 54).

However, Plaintiff could stand for an hour and had no problems with sitting. (R. at 52). She could also dress herself without limitation, and could lift a gallon of milk. (R. at 52). Plaintiff testified that she was still capable of driving, and did so at least twice a week to go to the grocery store for about forty five minutes. (R. at 36, 48). Plaintiff also attended her son's sporting events, and regularly attended church. (R. at 50, 52).

Plaintiff believed that her heart ejection rate was only at twenty percent. (R. at 50). She also believed she was suffering from short-term memory loss as a result of her aneurysm. (R. at 55, 57 – 58). As a result of taking blood thinners Plaintiff noticed that she bruised and bled more easily. (R. at 47).

To determine what gainful employment may have been available to an individual with Plaintiff's physical limitations, the ALJ posed the following hypothetical to the vocational expert: sedentary work requiring standing for no more than two hours of an eight hour workday, sitting no more than six hours, no work at unprotected heights or around dangerous moving machinery, only occasional postural movements, no use of machinery producing intense vibrations or strong magnetic fields, no welding, and no exposure to high concentrations of smoke, fumes, gas, or odors. (R. at 65 – 66).

The vocational expert testified that a person with such limitations would have the following employment opportunities available: "surveillance system monitor," with 300,000 positions in the national economy and at least 3,000 in Pennsylvania, and "information clerk," with 200,000 positions in the national economy and at least 2,500 in Pennsylvania. (R. at 66).

### IV. STANDARD OF REVIEW

To be eligible for social security disability benefits under the Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). Judicial review of the Commissioner's final determination of individual claims is provided by statute. 42 U.S.C. §§

405(g)[2] and 1383(c)(3)[3]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. When reviewing a decision, the district court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To

---

[2]

Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3]

Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

8

determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. §706.

V. DISCUSSION

In his decision, the ALJ determined that Plaintiff's physical ailments disabled Plaintiff from engaging in substantial gainful activity between November 11, 2006, and December 31, 2007. (R. at 20). Thereafter, Plaintiff ceased to be disabled because she retained the capacity to perform sedentary work with the following limitations: she could do no job requiring sitting more than six hours of an eight hour workday; she could do no more than two hours of standing or walking; she could do no work at unprotected heights or with dangerous, moving machinery; she could do no work requiring more than occasional postural movements; she could not perform work involving welding; she needed to avoid exposure to equipment producing vibrations and magnetic fields; and, she needed to avoid exposure to high concentrations of smoke, fumes, gases, and odors. (R. at 20).

Plaintiff objects to the ALJ's conclusion that she ceased to be disabled. (Doc. No. 6 at 9). While Plaintiff's condition showed medical improvement, she contends that the medical record did not provide sufficient objective evidence to support the ALJ's determination, and alternatively, argues that the ALJ's residual functional capacity ("RFC") assessment did not adequately reflect her limitations, and therefore could not satisfy the requirement that substantial evidence support the ALJ's decision. (*Id.* at 12). Specifically, Plaintiff claims that Dr. Flores' medical opinions were not all accorded proper consideration by the ALJ, and medical improvement was not shown as required under 20 C.F.R. § 404.1594(b)(1). (*Id.* at 9 – 12).

9

42 U.S.C. § 423(f) allows for disability benefits to be terminated when a claimant's disability has ceased. *Losser v. Astrue*, 2008 WL 3540597 at 4 (W.D.Pa. 2008). Termination of benefits is predicated upon substantial evidence of medical improvement related to claimant's ability to work, and the ability of a claimant to engage in some form of substantial gainful activity. *Id.*; *Palmer*, 284 Fed. Appx. at 875. However, in order for a court to find that substantial evidence supports an ALJ's determination of medical improvement, it must be determined whether treating physicians' opinions in a case were accorded proper weight – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).

While it is not expected that an ALJ provide the rigorous analysis expected of a medical professional when justifying his or her decisions, it is expected that when analyzing a treating physician's findings, the ALJ will be as "comprehensive and analytical as feasible." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). A court should have the ability to determine if "significant probative evidence was not credited or simply ignored." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). An ALJ "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 255 F.3d 310, 317 (3d Cir. 2000) (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Moreover, an ALJ "should not substitute his lay opinion for the medical opinion of experts," or engage in "pure speculation" unsupported by the record. *Id.* at 318-19; *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

Unfortunately, such is not the case at present. While it is possible that substantial evidence exists in the record to support the ALJ's conclusion that medical improvement would allow Plaintiff to engage in substantial gainful activity, the ALJ's failure to consider and analyze all the pertinent evidence regarding Plaintiff's limitations brings into question the accuracy of his disability timeframe. Dr. Flores specifically found that Plaintiff would require one five minute rest period per hour when working, and also would need to lie down or sit in a recliner for a substantial period during the day. (R. at 526). Dr. Flores' limitations findings, including the two above-mentioned limitations, were marked as "temporary" in nature, yet would still have a six month to one year duration. (R. at 526). In light of the fact that these limitations findings were made on September 17, 2007, and were not explicitly discussed by the ALJ in any way, it is possible that the effect of these limitations could extend Plaintiff's disability period beyond December 31, 2007. (R. at 527). Without a discussion of this portion of Dr. Flores' medical evidence, the court will not say that substantial evidence supported the ALJ's determination.

## VI. Conclusion

Based upon the foregoing, the court will not hold that substantial evidence supported the ALJ's decision, because pertinent medical evidence on record was not properly discussed. As a result, the court will not find that Plaintiff was capable of maintaining substantial gainful employment on a full-time basis after December 31, 2007, if ever.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. #5] is denied, to the extent it seeks judgment in the form of an award of benefits directly to Plaintiff, and is granted, to the extent it seeks remand of the case for reconsideration by the ALJ;

Defendant's Motion for Summary Judgment [Doc. #7] is denied; The decision of the ALJ will be vacated and the case remanded for further consideration not inconsistent with this opinion.

Gary L. Lancaster
Chief United States District Judge

cc/ecf: Gregory T. Kunkel
Kunkel & Fink, L.L.P.
Brentwood Professional Building
4411 Stilley Road, Suite 206
Pittsburgh, PA 15227
(412) 885-3880

Christy Wiegand, Esq.
United States Attorney's Office (PGH)
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
(412) 644-3500